**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| CRAWFORD SUPPLY GROUP, INC., FEIGER FAMILY PROPERTIES, LLC; the ESTATE OF MIRIAM FEIGER; JAMES MAINZER, as co-trustee of the Feiger Irrevocable Charitable Lead Trust and the Steven Feiger Children's Trust, and as trustee of the Siegfried-Steven 1983 Trust, the Siegfried-Steven 1985 Trust, the Judith Feiger Trust, the Siegfried-Judith 1983 Trust, the Siegfried-Judith 1985 Trust, the Steven-Jordyn Feiger 1988 Trust, and the Steven-Zachary Feiger 1988 Trust; the FEIGER FAMILY INVESTMENT PARTNERSHIP; and JUDITH FEIGER, individually, | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) |
| Plaintiffs, | ) ) |
| v. | ) No. 09 C 2513 ) |
| LaSALLE BANK, N.A., | ) Judge Rebecca R. Pallmeyer ) |
| Defendant. | ) |

<u>**MEMORANDUM OPINION AND ORDER**</u>

Plaintiffs, a collection of trusts, beneficiaries, and businesses affiliated with the Feiger family, brought this action against Defendant LaSalle Bank, N.A. ("LaSalle") for allegedly facilitating the systematic embezzlement of funds by family accountant Robert Rome. Rome served as executor for Miriam Feiger's estate and as the trustee and fiduciary of the relevant family trusts and other accounts. According to Plaintiffs, Rome looted several checking accounts in his care, absconding with somewhere between $5 million and $6 million of Plaintiffs' money. In this lawsuit, Plaintiffs allege that LaSalle knowingly or in bad faith honored invalid checks from Rome, permitted Rome to improperly deposit trust monies into his personal accounts, executed unauthorized wire transfers on Rome's behalf, and allowed Rome to establish a fraudulent account at LaSalle to conceal his crimes. LaSalle denies these charges and moves to dismiss all claims under Fᴇᴅ. R. Cɪᴠ. P. 12. For the reasons explained herein, Defendant's motion to dismiss is granted, and the complaint is dismissed without prejudice.

## BACKGROUND

As this case comes before the court on a FED. R. CIV. P. 12 motion to dismiss, the court accepts as true all factual allegations of the complaint and draws all inferences in Plaintiffs' favor. *See*, *e.g.*, *Hukic v. Aurora Loan Services*, 588 F.3d 420, 434 (7th Cir. 2009). The facts drawn from the complaint are as follows.

Plaintiffs are a group of family trusts, beneficiaries, and businesses affiliated with the family of Siegfried and Miriam Feiger. Siegfried Feiger is the family patriarch and founder of Crawford Supply Group, Inc. ("Crawford"), a plumbing supply business owned by the family and headquartered in Morton Grove, Illinois. Crawford and two related business entities, Feiger Family Properties, LLC, and Feiger Family Investment Properties Partnership, are among the Plaintiffs. Plaintiff James Mainzer is co-trustee of several family trusts established by Siegfried and Miriam Feiger and their children, Steven and Judith Feiger. Judith Feiger, in her individual capacity, and the estate of Miriam Feiger, who died in 1999, are also named as Plaintiffs. (Compl. ¶ 3-8.) Defendant LaSalle Bank is a national bank that has been a citizen of North Carolina since merging with Bank of America, N.A. in October 2008. (Notice of Removal, D.E. 1, at ¶ 2.) At the time that it removed this action to federal court, Defendant asserted that no Plaintiff (nor any member of the Plaintiff LLC) is a citizen of North Carolina. (*Id.*)[1]

Seven of the Plaintiffs—the estate of Miriam Feiger, the Steven Feiger Children's Trust, the Lead Trust, Crawford, Feiger Family Properties, Feiger Family Investment Properties, and Judith Feiger—maintained checking accounts with LaSalle during the relevant period. (Compl. ¶ 15.)

---

[1]     For purposes of diversity jurisdiction, a limited liability corporation is a citizen of every state where its members are citizens. *See Belleville Catering Co. v. Champaign Market Place, LLC*, 350 F.3d 691, 692 (7th Cir. 2003). In its Notice of Removal, LaSalle alleged that the members of Feiger Family Properties LLC "are individuals . . . who are not citizens of North Carolina" based only on LaSalle's "information and belief." Plaintiffs are directed, in filing their amended complaint, to confirm the citizenship of the LLC members.

Between January 10, 2003 and September 11, 2007, Plaintiffs' fiduciary, Robert Rome, embezzled at least $2.6 million from Plaintiffs' checking accounts at LaSalle. (*Id.*) Rome also improperly transferred at least $3.1 million in funds to his personal and business accounts at LaSalle from Plaintiffs' accounts at other banks. (*Id.* at ¶ 17.) Rome was accountant, trustee, executor, and fiduciary to the various Plaintiffs. In those capacities, he was charged with the management of Plaintiffs' funds and authorized to endorse checks and to deposit and transfer monies on Plaintiffs' behalf. (*Id.* at ¶ 18-19.)

Plaintiffs allege that LaSalle knew that Rome acted in a fiduciary capacity for Plaintiffs' funds. Copies of all trust agreements establishing the Plaintiff trusts, which identified Rome as trustee and instructed that Rome was to manage the trusts solely for the benefit of the trust beneficiaries, were on file with LaSalle. (*Id.* at ¶ 19.) Rome wrote checks from Miriam Feiger's estate to the order of "Robert Rome – Executor" and the estate account named Rome as executor. Rome regularly referred to himself as Plaintiffs' trustee when drafting or endorsing checks and other documents sent to LaSalle on Plaintiffs' behalf. (*Id.*) The signature cards on all of Plaintiffs' accounts identify Rome as a fiduciary. (*Id.*) Though they do not explain how, Plaintiffs also allege that LaSalle was on notice that Rome's firm, Rome Associates, served as Plaintiffs' accountant. (*Id.*)

On 70 separate occasions, LaSalle accepted checks endorsed by Rome or transferred funds at Rome's instruction from Plaintiffs' accounts to Rome's personal accounts and business accounts for Rome Associates. (*Id.* at ¶ 15.) Plaintiffs assert that Rome was not authorized to make these transactions and that the checks accepted by LaSalle were therefore not properly payable. (*Id.* at ¶ 21.) Plaintiffs further assert that LaSalle permitted Rome to fraudulently open a joint checking account in the name of Judith Feiger, without Feiger's knowledge or consent, which

Rome then used to launder some of the funds he embezzled from Plaintiffs' other accounts.[2] (*Id.*) To establish that account, which was held jointly in Rome's name, Plaintiffs allege that Rome forged Feiger's signature on deposit agreements and signature cards. (*Id.* at ¶ 27.) LaSalle never verified Feiger's identity or confirmed her authorization to open the account. (*Id.* at ¶ 29.)

Plaintiffs allege that LaSalle knew or should have known that Rome was breaching his fiduciary obligations to Plaintiffs by diverting funds for his own purposes, and that LaSalle's behavior amounted either to knowing assistance of Rome's crimes or bad faith on the part of the bank. (*Id.* at ¶ 22.) Plaintiffs assert that the checks and transfer records reveal on their face that Rome was diverting funds to his personal accounts, and, on certain occasions, Rome endorsed checks payable to him as trust fiduciary by signing only his own name. (*Id.*) Plaintiffs contend that Rome's transfer of Plaintiff's funds to his personal accounts "was indicative of malfeasance," and the frequency and size of the checking transactions and wire transfers that Rome directed were red flags that should have alerted LaSalle to Rome's embezzlement. (*Id.*) LaSalle neither investigated nor notified Plaintiffs of Rome's activities, however. Rome himself was actively lying to Plaintiffs by falsifying reports and account statements. (*Id.* at ¶ 31.) According to Plaintiffs, Rome's concealment and LaSalle's failure to investigate "prevented Plaintiffs from discovering the full extent of the embezzlement and LaSalle's participation." (*Id.* at ¶ 32.) The complaint gives no hint as to what has become of Rome, and he is not named as a party to this action.

Plaintiffs' complaint sets forth six claims for relief against LaSalle. First, Plaintiffs contend that LaSalle's conduct violates Section 4-401 of the Illinois Uniform Commercial Code, 810 ILCS 5/4-401, because the checks honored by the bank were neither authorized nor properly payable. (Compl. ¶ 34.) Next, Plaintiffs assert a common law conversion claim against LaSalle, claiming that

---

[2]     The complaint does not specify how much money passed through this fraudulently established account or how the account is related to Rome's separate embezzlement activities, in which he merely deposited checks into his personal accounts.

the bank improperly assumed control over the funds deposited at Rome's direction and that the bank "engaged in a scheme, plan, or conspiracy to allow Rome to loot Plaintiffs' checking accounts." (*Id.* at ¶ 44.) Third, Plaintiffs assert what appears to be a common law negligence claim against LaSalle, which Plaintiffs characterize as "negligence amounting to bad faith," contending that "LaSalle breached its duties of reasonable care and good faith" by improperly following Rome's directions in honoring checks, wiring and accepting funds, and establishing a joint account for Judith Feiger without her knowledge or consent. (*Id.* at ¶ 52.) Fourth, Plaintiffs assert that LaSalle violated the Illinois Fiduciary Obligations Act, 760 ILCS 65/1 *et seq.*, because the bank "was aware of facts sufficient to show that Rome was breaching his fiduciary duties," but the bank deliberately refrained from investigating further in a manner that amounted to bad faith. (*Id.* at ¶ 80.) In the complaint's remaining two counts, Plaintiffs assert a breach of contract claim against LaSalle and accuse LaSalle of tortiously aiding and abetting Rome's breach of fiduciary duty.

In July 2009, LaSalle moved to dismiss all counts of the complaint. Defendant contends that several of the Plaintiffs lack standing to bring this suit, and that the bank owed no duty at all to those parties who were not its customers. LaSalle further argues that Plaintiffs have failed to allege essential elements of their claims and that Plaintiffs' claims are precluded by the Illinois statue governing fiduciary obligations. For the reasons stated below, LaSalle's motion is granted.

## DISCUSSION

### I.    Standard on Motion to Dismiss

The federal rules teach that "[a] pleading that states a claim for relief must contain: . . . a short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a). A plaintiff need not plead particularized facts, but the factual allegations of a complaint must be sufficient "to raise a right of relief above a speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). To do this, the plaintiff must plead "factual content that allows the court to

draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, __ U.S. __, 129 S. Ct. 1937, 1949 (2009). The "formulaic recitation of the elements of a cause of action" or "an unadorned, the-defendant-unlawfully-harmed-me accusation," will not satisfy the pleading requirements. *Id.*

A judge reviewing a motion to dismiss does not engage in fact-finding. *In re Consolidated Industries*, 360 F.3d 712, 717 (7th Cir. 2004). Instead, the court accepts a plaintiff's well-pleaded allegations as true and draws reasonable inferences in the plaintiff's favor. *Tamayo v. Blagojevich*, 526 F.3d 1074, 1081 (7th Cir. 2008). This deference is inapplicable to legal conclusions, however, and the court is not bound to accept legal claims merely because they are "couched as factual allegation[s]." *Twombly*, 550 U.S. at 555.

The court considers Defendant's motion to dismiss with these standards in mind.

## II.  Standing

LaSalle first seeks to dismiss all claims as they relate to the Estate of Miriam Feiger and James Mainzer as co-trustee of the Feiger family trusts because those parties are improperly named as Plaintiffs and lack standing to maintain the lawsuit.

LaSalle points out that it is a well-established point of Illinois law that "estates are not natural or artificial persons and lack the capacity to sue or be sued." *Precision Components Inc. v. Kuntz Estate*, 112 Ill. App. 3d 309, 310, 445 N.E.2d 449, 450 (1st Dist. 1983). Thus, the proper Plaintiff in this case is not the Estate of Miriam Feiger, but the estate's current executor, identified in Plaintiffs' brief as Siegfried Feiger. Plaintiffs concede that they erred in naming Miriam Feiger's estate and not its executor, and they seek leave to amend the complaint to remedy this defect. (Pl.'s Resp. at 35.) A mistake of this nature is generally treated as a simple "misnomer subject to correction, not dismissal," and the court sees no reason why it should be otherwise here. *See In re Marriage of Schauberger*, 253 Ill. App. 3d 595, 598, 624 N.E.2d 863, 866 (2d Dist. 1993).

6

Accordingly, the court considers the remainder of Defendant's motion as though Plaintiffs had properly named Seigfried Feiger as executor of Miriam Feiger's estate.

Next, LaSalle contends that James Mainzer lacks standing to assert claims on behalf of the trusts for which he is named as "co-trustee." "Under Illinois law . . . 'a co-trustee cannot exercise a joint power individually.' The right to sue is one such joint power." *Godfrey v. Kamin*, 62 Fed. Appx. 693, 694-95 (7th Cir. 2003) (citing *Madden v. University Club of Evanston*, 97 Ill. App. 3d 330, 332, 422 N.E.2d 1172, 1174 (1st Dist. 1981)). Illinois has codified its requirement that where there are three or more co-trustees of a trust, the agreement of at least a majority of the co-trustees is required to exercise a joint power, such as commencing suit on the trust's behalf. 760 ILCS 5/10. The complaint's reference to Mainzer as "co-trustee" on its face suggests that there are other co-trustees whose assent is necessary for Mainzer to maintain suit on behalf of the Feiger family trusts. The complaint does not adequately allege, nor have the Plaintiffs attempted to demonstrate elsewhere, that Mainzer has been properly authorized by his fellow co-trustee(s) to bring this lawsuit.

When challenged as a factual matter, the Plaintiffs bear the burden of supporting the allegations necessary for standing with competent proof. *Retired Chicago Police Ass'n v. City of Chicago*, 76 F.3d 856, 862 (7th Cir. 1996). Plaintiffs have made no showing here. The court assumes that Plaintiffs will be able to cure this deficiency as well, and therefore proceeds to address the merits of Plaintiffs' claims. Plaintiffs' failure to provide competent proof of standing is, however, technically sufficient in itself to grant LaSalle's motion with regard to the claims advanced by Mainzer.

## III.     The Fiduciary Obligations Act

The parties agree that the transactions in question occurred in Illinois and that Illinois law governs in this case. The parties also appear to agree on many of the key facts. They agree that

Rome was a fiduciary of Plaintiffs, both as a trustee and as an executor, and that Rome purported to be acting in his fiduciary capacity during his interactions with LaSalle. Rome was authorized to act on behalf of Plaintiffs for their benefit with regard to their accounts at LaSalle and other banks. Rome was authorized to endorse checks payable to Plaintiffs and to draw upon the funds in Plaintiffs' accounts. In Illinois, the Fiduciary Obligations Act governs the assignment of liability when a bank deals with a fiduciary acting in his fiduciary capacity, as Rome appears to have been doing here. 760 ILCS 65/1 *et seq.*

The statute provides: "A person who in good faith pays or transfers to a fiduciary any money or other property which the fiduciary as such is authorized to receive, is not responsible for the proper application thereof by the fiduciary . . ." 760 ILCS 65/2. Section 9 of the statute goes on to include this protection against liability for a bank acting without actual knowledge of the fiduciary's breach of his duties:

> Notwithstanding any other law, if a fiduciary makes a deposit in a bank to his personal credit of checks drawn by him upon an account in his own name as fiduciary, or of checks payable to him as fiduciary, or of checks drawn by him upon an account in the name of his principal if he is empowered to draw checks thereon, or of checks payable to his principal and indorsed by him, if he is empowered to indorse such checks, or if he otherwise makes a deposit of funds held by him as fiduciary, the bank receiving such deposit is not bound to inquire whether the fiduciary is committing thereby a breach of his obligation as fiduciary; and the bank is authorized to pay the amount of the deposit or any part thereof upon the personal check of the fiduciary without being liable to the principal, unless the bank receives the deposit or pays the check with actual knowledge that the fiduciary is committing a breach of his obligation as fiduciary in making such deposit or in drawing such check, or with knowledge of such facts that its action in receiving the deposit or paying the check amounts to bad faith.

760 ILCS 65/9. The purpose of the Fiduciary Obligations Act is to facilitate banking and financial transactions and to shift the burden of employing honest fiduciaries to the principal and away from the banking institution. *Mutual Service Casualty Insurance Co. v. Elizabeth State Bank,* 265 F.3d 601, 622 (7th Cir. 2001)*; Time Savers, Inc., v. LaSalle Bank, N.A.*, 371 Ill. App. 3d 759, 769, 863 N.E.2d 1156, 1165 (2nd Dist. 2007) (citing *Mikrut v. First Bank of Oak Park*, 359 Ill. App. 3d 37, 48-

49, 832 N.E.2d 376, 384 (1st Dist. 2005)). The statute is meant to limit liability to "relatively uncommon cases in which the person who deals with the fiduciary knows all the relevant facts." *County of Macon v. Edgcomb*, 274 Ill. App. 3d 432, 438, 654 N.E.2d 598, 602 (4th Dist. 1985). The statute thus relieves banks of negligence liability and provides a defense for banks accused by principals of improper dealings with fiduciaries. *Continental Casualty Co. v. American National Bank & Trust Co. of Chicago*, 329 Ill. App. 3d 686, 702, 768 N.E.2d 352, 365 (1st Dist. 2002).

In this case, it is undisputed that Rome was a fiduciary who made deposits to his personal credit at LaSalle Bank of checks payable to him as a fiduciary. By its terms, the Fiduciary Obligations Act will bar Plaintiffs' claims unless Plaintiffs can show actual knowledge or bad faith on the part of LaSalle. Illinois law does not require harmed principals to plead "evidentiary facts that will be used to prove the defendant's knowledge." Nevertheless, in order to state a claim under the statute, a plaintiff must do more than merely use "the words 'actual knowledge' and 'bad faith'." *Time Savers, Inc.*, 371 Ill. App. 3d at 768, 863 N.E.2d at 1165; *Cf. Iqbal*, 129 S. Ct. at 1949.

Plaintiffs contend that they have sufficiently alleged both actual knowledge and bad faith on the part of LaSalle. As more fully explained below, however, the court concludes that Plaintiffs have overstated their case. While the complaint repeatedly employs the words "actual knowledge" and "bad faith," Plaintiffs have not alleged facts sufficient to support those conclusions. No factual allegations create the inference that any representative of LaSalle had actual knowledge of Rome's malfeasance or that LaSalle acted in bad faith in its dealings with Rome. Nor do Plaintiffs allege behavior that is so obvious or suspicious that it suggests LaSalle colluded with Rome or otherwise acted unreasonably so as to assume liability for Rome's wrongdoing.

### A.     No Allegation of Actual Knowledge

The Illinois courts have defined "actual knowledge" as an "awareness at the moment of the transaction that the fiduciary is defrauding the principal" and as "having express factual information

that funds are being used for private purposes that violate the fiduciary relationship." *Time Savers, Inc.*, 371 Ill. App. 3d at 768, 863 N.E.2d at 1165. Plaintiffs do not allege sufficient factual content to meet the requirements of this definition. Leaving aside for the moment Plaintiffs' separate allegations about the fraudulent account in the name of Judith Feiger, Plaintiffs essentially allege the following: (1) LaSalle knew Rome was Plaintiffs' fiduciary; (2) Rome frequently moved large sums of money into his personal and business accounts at LaSalle from Plaintiffs' fiduciary accounts; and (3) when endorsing checks, Rome typically signed as "Robert Rome - Executor" or "Robert Rome - Trustee," but occasionally signed only his own name. Assuming these facts are true, they do not create an inference that LaSalle possessed actual knowledge of Rome's malfeasance.

The complaint devotes several paragraphs to alleging that LaSalle had notice that Rome was Plaintiffs' fiduciary. LaSalle does not challenge these allegations. Mere knowledge of the fiduciary relationship is not enough to raise a duty of inquiry on the part of a bank, however. *Ohio Cas. Ins. Co. v. Bank One*, No. 95 C 6613, 1996 WL 507292, *3 (N.D. Ill. Sept. 5, 1996) (citing *Edgcomb*, 274 Ill. App. 3d at 436, 654 N.E.2d at 601). Thus, Plaintiffs purport to rely primarily on the allegation that Rome regularly deposited checks payable to the Feiger trusts into his own personal and business accounts in support of the allegation that LaSalle "should have known" that Rome was perpetrating a fraud. What LaSalle "should have known" is not what matters, however. What matters under the Fiduciary Obligations Act is what LaSalle actually knew, and Illinois courts have consistently held that the deposit or transfer of money by a fiduciary into his personal accounts does not, without more, give rise to the inference that a bank had actual knowledge of wrongdoing or bad faith. *See Edgcomb*, 274 Ill. App. 3d at 436-38 , 654 N.E.2d at 601-03 (no liability for bank which honored checks written by county treasurer to his personal accounts from county funds); *Johnson v. Citizens National Bank of Decatur*, 30 Ill. App. 3d 1066, 1070-72, 334 N.E.2d 295, 299-300 (4th Dist. 1975) (no liability for bank where fiduciary deposited principal's

funds into fiduciary's personal account and even used principal's funds to pay fiduciary's personal debt to bank); *Hosselton v. First American Bank, N.A.,* 240 Ill. App. 3d 903, 608 N.E.2d 630 (3rd Dist. 1993) (no cause of action against bank where fiduciary deposited principal's funds into fiduciary's personal account and used principal's funds to write personal checks.)

As the Illinois cases demonstrate, an allegation that a fiduciary made deposits into his personal accounts—either by depositing checks payable to himself as a fiduciary or checks made payable to a principal and endorsed by the fiduciary—is insufficient to state a claim that can survive the Fiduciary Obligations Act. In *Edgcomb,* for example, the Illinois Court of Appeals affirmed dismissal under the Act even though the plaintiff there had alleged that a bank knew the owners of the principal accounts involved, allowed a fiduciary to transfer large sums from principal accounts for his personal use, and accepted improper or unauthorized signatures and honored checks that were improperly endorsed. 274 Ill. App. 3d at 438-39, 654 N.E.2d at 602-03. Plaintiffs allege essentially the same facts in this case.

Plaintiffs contend that the fact that Rome transferred funds frequently and in large amounts is sufficient to create a question of fact as to whether LaSalle had actual notice of Rome's malfeasance, or, at least, whether LaSalle's duty to investigate further was triggered. But, as a matter of Illinois law, "mere suspicious circumstances are not enough to require the bank to inquire into the fiduciary's actions." *Johnson*, 30 Ill. App. 3d at 1072, 334 N.E.2d at 300. There are "many legitimate reasons why an agent and principal might engage in odd checking practices." *Id.* at 1072, 334 N.E.2d at 300. Likewise, there are many legitimate reasons why a fiduciary might frequently move large sums of money on behalf of a principal. That Rome occasionally endorsed checks using only his own name, without adding the words "trustee" or "executor," or deposited checks payable to Rome Associates, also fails as a matter of law to generate an inference that LaSalle had actual notice or a duty to take further action. *See*, *e.g.*, *Conder v. Union Planters Bank, N.A.*, 384 F.3d 397, 400 (7th Cir. 2004) ("Tasking banks to read every check to make sure that the

payee's identity was consistent with the character of the account would impose an unreasonable burden, and so the failure to perform the task would not be negligence even if banks did have a general duty of care to noncustomers (which, to repeat, they do not).")

Plaintiffs acknowledge that, as fiduciary, Rome was authorized to endorse checks payable to Plaintiffs and to draw on account funds. According to Plaintiffs' own allegations, LaSalle knew of Rome's authority as fiduciary and relied on Rome's authority in following his instructions. Other than Plaintiffs' conclusory legal statements, Plaintiffs offer no basis for inferring that any agent at LaSalle had "express factual information" or actual "awareness at the moment of the transaction[s]" that Rome was defrauding Plaintiffs. Accordingly, the court finds that Plaintiffs' allegations have failed to raise their right of relief above a speculative level as to this aspect of their claims.

### B.      No Alleged Bad Faith

Plaintiffs' contention, based on the same facts, that LaSalle acted in bad faith is also insufficiently supported in the complaint. The Fiduciary Obligations Act itself does not define "bad faith," but the statute does define good faith, stating, "A thing is done in good faith . . . when it is in fact done honestly, whether it be done negligently or not." 760 ILCS 65/1. Illinois courts have fleshed out the definition of bad faith by explaining that it includes situations "where the bank suspects the fiduciary is acting improperly and deliberately refrains from investigating in order that [the bank] may avoid knowledge that the fiduciary is acting improperly." *Mikrut v. First Bank of Oak Park*, 359 Ill. App. 3d 37, 50, 832 N.E.2d 376, 385 (1st Dist. 2005); *Cf. UNR-Rohn, Inc. v. Summit Bank of Clinton*, 687 N.E.2d 235, 239(Ind. App.1997) (bad faith is not simply bad judgment or negligence; it implies the conscious doing of wrong). When determining whether bad faith exists, courts consider whether it is "commercially unjustifiable for the payee to disregard and refuse to learn facts [that are] readily available." *Appley v. West,* 832 F.2d 1021, 1031 (7th Cir 1987).[3]

---

[3]      In *Appley*, the Seventh Circuit reversed the trial court's dismissal for failure to state (continued...)

Plaintiffs invoke the Seventh Circuit's observation in *Appley* that "[a]t some point, obvious circumstances become so cogent that it is 'bad faith' to remain passive," and cite several cases in which fiduciary breaches were so obvious that a bank was ultimately found to have acted in bad faith by not investigating. *Id.* at 1031. The cases offered by Plaintiffs demonstrate, however, that a showing of bad faith requires substantially more than Plaintiffs have alleged here. For instance, Plaintiffs rely on *Falk v. Northern Trust Co*, a case in which a bookkeeper embezzled roughly $2 million from her employer over the course of four years. 327 Ill. App. 3d 101, 103-04, 763 N.E.2d 380, 382 (1st Dist. 2001). In that case, the court found that the principal had sufficiently alleged bad faith by the bank by alleging (1) the bookkeeper transferred the principal's funds into her own account at the bank, (2) the bookkeeper used the principal's funds to pay a mortgage and home equity loan that she owed to the bank, and (3) the bank had reviewed the bookkeeper's tax returns and other personal statements and was aware that the bookkeeper had insufficient income to support the account and loan activity she was generating. *Id.* The fact that the bank accepted checks drawn on the principal's account in payment of the fiduciary's personal debts owed to the bank was critical to the court's finding in that case. *Id.* at 110-12, 763 N.E.2d at 387-88; *see also Ohio Cas. Ins. Co.* at *4 (plaintiff sufficiently alleged bad faith where bank accepted payment of fiduciary's personal debt from principal's account, bank permitted fiduciary to open new accounts for principal with no apparent authority, bank extended fiduciary lines of credit without requiring a loan application, and bank caught fiduciary kiting checks and took no action subsequent to

---

[3](...continued)
a claim in a case where the plaintiff "alleged [a bank's] bad faith and actual knowledge in her complaint." The defendant bank in *Appley* had repeatedly honored forged checks and permitted the fiduciary to cash checks that had never been endorsed at all. The Court of Appeals found those allegations specific enough to substantiate the complaint's claim of bad faith. 832 F.2d at 1031. Because Plaintiff does not allege that LaSalle accepted unendorsed checks and because the *Appley* decision predates the Supreme Court's decisions in *Twombly* and *Iqbal*, however, *Appley* does not rescue the complaint in this case. The more recent Supreme Court cases are clear that a "formulaic recitation" of the law is not enough to withstand a motion to dismiss. Instead, the onus is on Plaintiffs to allege some factual content sufficient to support an inference that LaSalle is liable for misconduct. Plaintiffs have failed to meet this burden.

discovery).[4]

In this case, Plaintiffs have not alleged any similar circumstance that gives rise to an inference of bad faith. The complaint provides no basis for an inference that LaSalle either suspected Rome of impropriety or "deliberately refrain[ed] from investigating" him. *Mikrut*, 359 Ill. App. 3d at 49-50, 832 N.E.2d at 385. Plaintiffs do not allege that LaSalle accepted payments from Rome to service Rome's personal debt. They do not allege that LaSalle had any special insight into Rome's income or his personal finances. They do not allege that any employee of LaSalle had a relationship with Rome. They do not allege that LaSalle gave Rome preferential treatment or assistance. They do not allege that LaSalle derived any benefit as a result of Rome's behavior. The transactions that Plaintiffs do describe were not *per se* alarming such that LaSalle's duty to investigate was triggered, and Plaintiffs make no attempt to allege that LaSalle was somehow willfully blind to Rome's wrongdoing. In short, Plaintiffs have failed to set forth any factual basis to suggest that LaSalle acted "commercially unjustifiably" or "deliberately" to avoid knowledge of Rome's wrongdoing. *Cf. Time Savers Inc.*, 371 Ill. App. 3d at 770, 863 N.E.2d at 1166 (dismissal affirmed where plaintiff "failed to allege any facts that indicate[d] [bank] *deliberately* failed to inquire" into wrongdoing, even if transactions were suspicious) (emphasis added). Accordingly, the court finds that Plaintiffs have failed to adequately allege bad faith.

## C. Preclusive Effect of the Fiduciary Obligations Act

The Uniform Fiduciaries Act, on which the Illinois statute is based, does not include the language "Notwithstanding any other law" as it appears in the Illinois statute. UNIF. FIDUCIARIES ACT § 9. In adding this language by amendment in 1998, the Illinois General Assembly expressed the intent to preempt other state law and to establish a total defense to banks for all claims arising from

---

[4]     The court in *Ohio Cas. Ins Co.* further alluded to a possible improper relationship between the fiduciary, who was a Township Supervisor and head of the county's Republican Party, and bank executives who were large supporters of the Republican Party, frequently socialized with the fiduciary, and had a strong financial interest in keeping the township's accounts with the bank.

a bank's honest interactions with fiduciaries.[5]   Illinois courts have recognized this intent, holding that the Fiduciary Obligations Act provides a blanket defense to suit, exculpating banks from liability any time its provisions apply.  *See Johnson*, 30 Ill. App. 3d at 1072, 334 N.E.2d at 300.  Because the Fiduciary Obligations Act is applicable here and because Plaintiffs have failed to state a claim capable of surviving the statute's requirements, all of Plaintiffs' claims must be dismissed.  LaSalle's motion will be granted, and the court need not consider the other bases raised by Defendant's motion for dismissal.

## IV.    Judith Feiger's Claim

Judith Feiger appears to have a potentially viable claim against LaSalle for permitting Rome to fraudulently open a joint account under her name without  verifying her identity.  The complaint alleges that Rome fraudulently misled LaSalle into opening a "secret account" by forging Judith Feiger's signature on bank documents.  The fact that Rome presented LaSalle with forged and misleading documents when he opened the joint account does not give rise to an inference that LaSalle acted with actual knowledge or bad faith with regard to Plaintiffs' other claims.  It may, however, support Judith Feiger's separate claim for negligence against the bank if she can show that LaSalle violated banking practices and regulations governing the establishment of accounts, 31 U.S.C.A. § 5318, and Rome does not appear to have been acting in an authorized fiduciary capacity when he opened the account.  *See Mutual Service Casualty Insurance Co.,* 265 F.3d at 624 ("The [Fiduciary Obligations Act] reiterates the need to focus on the agent's authority with

---

[5]        Under the Illinois Uniform Commercial Code, 810 ILCS 5/3-307, the acceptance of an instrument for the personal benefit of a fiduciary may give rise to claims advanced under the UCC.  To the extent that the Fiduciary Obligations Act conflicts with that provision, the court believes the Fiduciary Obligations Act prevails.  The Fiduciary Obligations Act contains an express preemption of other law in this area, and the amendment that incorporated the preemption provision was added after the enactment of 810 ILCS 5/3-307.  Under common canons of construction, when two statutes conflict, the more recent statute generally prevails as the later expression of legislative intent.  *See, e.g., Jahn v. Troy Fire Protection District*, 163 Ill.2d 275, 282, 644 N.E.2d 1159, 1162 (1994).

respect to the particular transaction at issue. . . . [That an agent] may have been a fiduciary for some purposes did not render him a fiduciary for all purposes.") Because the drafting of Plaintiffs' complaint makes it nearly impossible to disentangle Judith Feiger's apparently viable claim from the Plaintiffs' other insufficiently supported ones, however, the court dismisses Judith Feiger's claim without prejudice and grants her leave to re-file a complaint that more clearly states her surviving claim.

## CONCLUSION

Defendant's motion to dismiss [16] is granted. The complaint is dismissed. Plaintiffs have leave to file an amended complaint within 21 days. Plaintiffs are directed, in filing their amended complaint, to identify the citizenship of the members of Plaintiff Feiger Family Properties LLC in order to confirm the court's jurisdiction.

ENTER:

Dated: January 21, 2010

_____
REBECCA R. PALLMEYER
United States District Judge