**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| **CRAWFORD SUPPLY GROUP, INC.; FEIGER FAMILY PROPERTIES, LLC; JAMES MAINZER**, as co-trustee of the Feiger Irrevocable Charitable Lead Trust and the Steven Feiger Children's Trust, and as trustee of the Siegfried-Steven 1983 Trust, the Siegfried-Steven 1985 Trust, the Judith Feiger Trust, the Siegfried-Judith 1983 Trust, the Siegfried-Judith 1985 Trust, the Steven-Jordyn Feiger 1988 Trust, and the Steven-Zachary Feiger 1988 Trust; the **FEIGER FAMILY INVESTMENT PARTNERSHIP; SIG FEIGER**, as the executor of the Estate of Miriam Feiger and as co-trustee of the Feiger Irrevocable Charitable Lead Trust; and **JUDITH FEIGER**, individually and as cotrustee of the Steven Feiger Children's Trust, <br><br> Plaintiffs, <br><br> v. <br><br> **BANK OF AMERICA, N.A.,** <br><br> Defendant. | <br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br>No. 09 C 2513 <br><br>Judge Rebecca R. Pallmeyer |
| **BANK OF AMERICA, N.A.,** <br><br> Third-Party Plaintiff, <br><br> v. <br><br> **HARRIS, N.A. and NORTH SHORE COMMUNITY BANK AND TRUST COMPANY,** <br><br> Third-Party Defendants. | |

## ORDER

Robert Rome, the accountant for a number of companies and trusts controlled by the Feiger Family, embezzled funds from those entities by drawing checks on the accounts of his clients and then depositing the money in his own personal or business accounts. In this action, the defrauded

entities have alleged that LaSalle Bank, now part of Defendant Bank of America ("the Bank"), knew or should have known about Rome's misconduct.

The Bank has filed a third-party action against two other financial institutions, Harris N.A. and North Shore Community Bank and Trust ("Harris and North Shore"), which took Rome's checks. The Bank alleges that Harris and North Shore breached Uniform Commercial Code transfer and presentment warranties in connection with checks deposited at those banks by Rome. As alleged in the Bank's Amended Third-Party Complaint, Harris and North Shore were the first banks to take the checks at issue for collection and, by presenting those checks to Bank of America, warranted pursuant to UCC §§ 3-416 and 4-207 "that [Third-Party Defendants were] entitled to enforce those . . . Checks and the signatures on the . . . Checks were authentic and authorized." (Amended Third-Party Compl. [102] ¶¶ 8, 15.) The Bank also alleges that pursuant to UCC §§ 3-417 and 4-208, Harris and North Shore "warranted to Bank of America that [they were] entitled to enforce those . . . Checks or authorized to obtain payment or acceptance of the . . . Checks on behalf of a person entitled to enforce the Checks, and that [Third-Party Defendants] did not have knowledge that signature of the drawer of the . . . Checks was unauthorized." (*Id.* ¶¶ 9, 16.)

Third-Party Defendants have moved to dismiss the Third-Party Complaint on a number of grounds [188, 191]. The Bank's Response [205] does not address many of these arguments. Instead, the Bank asserts simply that Harris and North Shore breached warranties that (a) they were "person[s] entitled to enforce the item," pursuant to UCC §§ 3-416(a)(1), 4-207(a)(1); (b) Rome was authorized to endorse the checks on behalf of the payees, pursuant to §§ 3-416(a)(2), 4-207(a)(2); and (c) Defendants had obtained the checks from a "person entitled to enforce the draft," pursuant to §§ 3-417(a)(1), 4-208(a)(1). (Third-Party Pl.'s Resp. at 3.) The Bank contends that the Third-Party Defendants have not explained whether they obtained the checks from a "person entitled to enforce the instrument," a term defined by UCC § 3-301 as including "the holder

2

of the instrument"—that is, "a person in possession of a negotiable instrument that is payable . . . to an identified person that is the person in possession." UCC § 1-201(21). The Bank continues, however, by acknowledging its understanding that Harris and North Shore "obtained the checks from Robert Rome, that Robert Rome was the holder of the checks, and that he was authorized to sign on behalf of the payees." (Pl.'s Resp. at 3.) The Bank suggests this does not resolve the matter because "[t]he Court . . . has yet to make those findings and unless and until those findings are made, it cannot be said that Bank of America's third-party complaint absolutely fails to state a claim." (*Id.*)

Third Party Defendants contend, to the contrary, that the court has indeed already made such findings. The court agrees. In its March 28, 2011 opinion, the court concluded that all of the checks at issue were "properly payable" pursuant to UCC § 4-401, except for checks related to the allegedly unauthorized Judith Feiger account. *Crawford Supply Group, Inc. v. Bank of America, N.A.*, No. 09 C 2513, 2011 WL 1131292, at *11-12 (N.D. Ill. March 28, 2011). Section 4-401 explains that "[a]n item is properly payable if it is authorized by the customer and is in accordance with any agreement between the customer and bank." 810 ILCS 5/4-401(a). The court concluded that the checks Rome deposited were in fact "properly payable," despite discrepancies between the named payee and the actual payee (*i.e.* the named payee was "Robert Rome, Executor" while the payee was "Robert Rome, Trustee"). *Id.* The court noted that in a similar circumstance, the Seventh Circuit reasoned that "had [the bank] returned the check to the named payee, he would have endorsed it and given it back to the individual who had deposited it, who would then have deposited it again with the proper endorsement, 'and so [plaintiff] would still have lost her money.'" *Id.* (quoting *Conder v. Union Planters Bank, N.A.*, 384 F.3d 397, 400 (7th Cir. 2004)). As this court noted in that earlier ruling, in making their § 4-401 argument the Plaintiffs were forced to rely on these minor discrepancies because, with the exception of the Judith Feiger account, there was no allegation that checks written by Rome on the various accounts held by Plaintiff were not

3

authorized. There were also no allegations that signatures or the instruments themselves were forged, which could also give rise to § 4-401 claims.

Thus, with the exception of the Judith Feiger account, Third-Party Defendants Harris and North Shore are correct: the court has already made a finding that Rome was authorized to write and endorse the checks that he wrote to himself and deposited at Harris and North Shore, and those checks were properly payable by Bank of America. This conclusion means that Rome was a "holder," or a "person in possession of a negotiable instrument that is payable . . . to an identified person that is the person in possession." UCC § 1-201(21). The Bank itself characterizes a "holder" as "a person entitled to enforce the instrument" and does not explain how Harris and North Shore breached any warranty that they received the checks from "a person entitled to enforce the draft," §§ 3-417(a)(1), 4-208(a)(1), or that the "signatures on the instrument [were] authentic and authorized." UCC §§ 3-416(a)(2), 4-207(a)(2). Nor has the Bank alleged that Harris or North Shore themselves are not "person[s] entitled to enforce the item," UCC §§ 3-416(a)(1), 4-207(a)(1), having received the checks from Rome.

The Bank might have some claims related to the allegedly unauthorized Judith Feiger account, but the Third-Party Complaint does not specifically allege that any of the checks at issue were drawn on that account. Despite the fact that the parties to the original action had engaged in substantial discovery, and the court had ruled on the § 4-401 issue well before the Bank filed its Answer to Plaintiffs' Amended Complaint [171], which incorporated its Third-Party Complaint, that pleading did not specifically identify any of the checks at issue, and did not allege that any were drawn on the Judith Feiger account.

For purposes of the UCC claims, the court has concluded that Rome was authorized to draw and endorse the checks at issue. The court need not reach address the remaining arguments for dismissal of the Bank's Third-Party Complaint. Third-Party Defendants' Motions to Dismiss [188, 191] are granted.

ENTER:

Dated: August 25, 2011

REBECCA R. PALLMEYER
United States District Judge