UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| CRAWFORD SUPPLY GROUP, INC.; FEIGER FAMILY PROPERTIES, LLC; JAMES MAINZER, as co-trustee of the Feiger Irrevocable Charitable Lead Trust and the Steven Feiger Children's Trust, and as trustee of the Siegfried-Steven 1983 Trust, the Siegfried-Steven 1985 Trust, the Judith Feiger Trust, the Siegfried-Judith 1983 Trust, the Siegfried-Judith 1985 Trust, the Steven-Jordyn Feiger 1988 Trust, and the Steven-Zachary Feiger 1988 Trust; the FEIGER FAMILY INVESTMENT PARTNERSHIP; SIG FEIGER, as the executor of the Estate of Miriam Feiger and as co-trustee of the Feiger Irrevocable Charitable Lead Trust; and JUDITH FEIGER, individually and as cotrustee of the Steven Feiger Children's Trust,<br><br>Plaintiffs,<br><br>v.<br><br>BANK OF AMERICA, N.A.,<br><br>Defendant. | <br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br>No. 09 C 2513<br><br>Judge Rebecca R. Pallmeyer |

**MEMORANDUM OPINION AND ORDER**

Robert Rome served as an accountant, executor, trustee, and fiduciary for various companies and trusts controlled by the Feiger Family. Rome embezzled millions of dollars from the Feiger companies and trusts by drawing checks on their accounts and depositing them in his own personal accounts. In this action, Plaintiffs have sued Defendant Bank of America as successor to the LaSalle Bank ("the Bank"), alleging that the Bank facilitated Rome's misconduct. The court has discussed the facts at length in other rulings, *see Crawford Supply Group, Inc.* v. *Bank of America, N.A.*, No. 09 C 2513, 2011 WL 3704262 (N.D. Ill. Aug. 23, 2011); *Crawford Supply Group, Inc.* v. *Bank of America, N.A.*, No. 09 C 2513, 2011 WL 1131292 (N.D. Ill. Mar. 28,

1

2011), and assumes familiarity with those rulings. The parties are now preparing for trial. The Bank has moved to strike the affidavit and bar the testimony of Plaintiffs' expert witness, Mark Bagnoli. For the reasons explained here, the motion is granted.

In *Daubert v. Merrell Dow Pharm., Inc.*, the Supreme Court explained that district courts serve as gatekeepers with respect to expert testimony; the Court charged trial judges with the task of excluding unreliable or irrelevant testimony that may mislead a jury. 509 U.S. 579, 592-93 (1993). Although *Daubert* concerned the admissibility of scientific evidence, its standards and the district courts' gatekeeping function apply equally to all expert testimony. *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 148 (1999). To determine the admissibility of expert testimony, courts engage in a three-part analysis: (1) a witness must demonstrate his/her expertise "by knowledge, skill, experience, training or education," FED. R. EVID. 702; (2) the reasoning or methodology employed by the expert must be reliable, *Daubert*, 509 U.S. at 592; and (3) the testimony must "assist the trier of fact to understand the evidence or to determine a fact in issue," FED. R. EVID. 702. In other words, the witness must be qualified and the testimony must be reliable and relevant. As explained below, the court here finds the Plaintiff's expert, Mark Bagnoli, qualified and his testimony relevant. The court is not satisfied, however, that the testimony is sufficiently reliable, and therefore grants the Bank's motion.

## **DISCUSSION**

As noted, the Bank has made no substantive challenges concerning Mr. Bagnoli's qualifications. Bagnoli has worked in the banking industry for roughly three decades, the bulk of his experience in internal controls and risk management. (Expert Report of Mark Bagnoli (hereinafter "Bagnoli Report"), Ex. 1 to Feiger Family Investment Partnership's Local Rule 56.1(B)(3) Statement of Additional Facts [196], at 3-4.) Since 2008, he has served as the Executive Vice President and Chief Audit Officer for BankUnited where he is responsible for regulatory compliance and anti-fraud efforts. (*Id.*) Earlier, Bagnoli was Executive Vice President and Chief

Risk Officer of the Federal Home Loan Bank, also involved in risk assessment and management. (*Id.*) Still earlier, Bagnoli spent twenty years with Bank One, working in a variety of risk management and audit positions before ultimately, in his role as Senior Vice President and Director of Corporate Audit, directing Bank One's global risk-based audit program. (*Id.*) The court is satisfied that Bagnoli is qualified to testify as to the banking industry standards regarding internal controls.

The court is satisfied, further, that Bagnoli's testimony concerning the commercial reasonableness of banking practices is relevant. Under *Daubert*, testimony is relevant where it "assist[s] the trier of fact to understand the evidence or to determine a fact in issue." *Daubert*, 509 U.S. at 591 (citing FED. R. EVID. 702). The Bank contends that Bagnoli's testimony "constitutes a legal conclusion" (Reply in Supp. of Bank of America's Mot. to Strike Mark Bagnoli's Aff. and Report and to Bar his Opinion [292] (hereinafter "Bank's Reply"), at 7), ostensibly because Bagnoli opines on the commercial reasonableness of the Bank's conduct, and that therefore his opinion would not assist a trier of fact. The reasonableness of a party's conduct is a common subject of expert testimony, however. *See, e.g.*, *Metavante Corp. v. Emigrant Sav. Bank*, 619 F.3d 748, 761-762 (7th Cir. 2010) (expert testified as to whether an online banking service provider performed its contract in a "commercially reasonable" manner); *U.S. Gypsum Co. v. Lafarge N. Am. Inc.*, 670 F. Supp. 2d 768, 773 (N.D. Ill. 2009) (security expert testified as to reasonableness of a company's information protection measures). Indeed, even in *Richman*, cited by the Bank, the court concluded that an expert's "opinion that the defendants used reasonable force is not ... an impermissible legal conclusion." *Richman v. Sheahan*, 415 F. Supp. 2d 929, 949 (N.D. Ill. 2006). "With explanation, testimony regarding the reasonableness or unreasonableness of particular conduct will assist the jury in understanding the evidence and determining facts in issue, and will not simply tell the jury what result to reach." *Dowe v. Nat'l R.R. Passenger Corp.*, No. 01 C 5808, 2004 WL 887410 at *1 (N.D. Ill. Apr. 26, 2004) (internal quotation marks omitted) (expert testified as to the reasonableness

3

of an Amtrak engineer's conduct).

Here, testimony from a qualified expert could assist a jury in determining a material fact. Risk management protocol in banking operations is not a matter of common knowledge and an expert could educate a jury on the industry norms. The commercial reasonableness of the Bank's conduct bears directly on claims made by Plaintiffs and on whether the Bank may have acted in bad faith, thereby eliminating a defense under the Fiduciary Obligations Act. Because expert testimony as to the commercial reasonableness of the Bank's conduct would assist the jury in its assessment of those issues, it is relevant under *Daubert*.

Ultimately, the only genuinely contested aspect of Bagnoli's testimony is its reliability. The Bank argues that Bagnoli has not shown that his experience-based testimony is sufficiently reliable and on this point, the court agrees. There can be no doubt that "an expert might draw a conclusion from a set of observations based on extensive and specialized experience." *Kumho*, 526 U.S. at 156. *See also Metavante*, 619 F.3d at 761 ("An expert's testimony is not unreliable simply because it is founded on his experience rather than on data."). Indeed, expert testimony "often will rest 'upon an experience confessedly foreign in kind to [the jury's] own'." *Kumho*, 526 U.S. at 149 (alteration in original) (quoting Learned Hand, *Historical and Practical Considerations Regarding Expert Testimony*, 15 HARV. L. REV. 40, 54 (1901)).

In this case, however, Bagnoli's experience-based testimony does not satisfy *Daubert*'s reliability standard because Bagnoli has not articulated what specific aspects of his banking experience support his conclusions regarding the Bank's conduct. "If the witness is relying solely or primarily on experience, then the witness must explain how that experience leads to the conclusion reached, why that experience is a sufficient basis for the opinion, and how that experience is reliably applied to the facts." FED. R. EVID. 702 advisory committee's notes. An expert witness cannot merely present his qualifications alongside his opinion; he must explain why the application of his prior experience to the facts at hand compel his final conclusions. *Metavante*,

619 F.3d at 761; *see also Minix v. Canarecci*, 597 F.3d 824, 835 (7th Cir. 2010) ("The expert must explain the methodologies and principles supporting the opinion."). Such an explanation is required by *Daubert*, in which the Court called on the trial judge to conduct a preliminary assessment of the validity of an expert's reasoning or methodology and his or her application of that reasoning or methodology to the facts at issue. *Daubert*, 509 U.S. at 592-93. No such assessment can be conducted, however, where the expert proffers opinion but no analysis.

The crux of Bagnoli's testimony is that the Bank acted in a commercially unreasonable manner when it failed to properly identify Rome's conduct as suspicious activity and as meriting thorough investigation. (Bagnoli Report at 24.) Throughout his affidavit and deposition, Bagnoli refers to his general experience as the basis for his opinions (*e.g.* Bagnoli Dep., Ex. Y to Bank of America's Resp. To Feiger Family Investment Partnership's Local Rule 56.1(B)(3) Statement of Additional Facts [212], at 88:14-15, 96:5-6, 115:19-20, 122:13-23), but he never draws explicit connections between specific incidences or lessons from his professional history and the Bank's conduct here. For example, after recounting the multiple instances where Rome deposited checks drawn from various of Plaintiffs' accounts in his own personal accounts, Bagnoli stated simply, "This type of activity is suspicious on its face and would warrant further investigation under a standard of commercial reasonableness." (Bagnoli Report at 28.) Bagnoli did not explain *why* Rome's conduct should have raised a red flag: He did not cite industry publications or standards for the identification of suspicious activity. He made no reference to any instances in his decades of banking experience where conduct similar to Rome's prompted an investigation of the scope allegedly required here. He offered no unique insight into banking practices that would justify his conclusion.

When, in his deposition, the Bank asked Bagnoli how he concluded that it should have "conducted a broad investigation of [Rome's] relationship with all accounts" (Bagnoli Dep. at 78:3-4), Bagnoli replied that his opinion was based upon "[his] experience with banks and their fraud

5

prevention activities and their requirements to maintain a safe and sound organization." (*Id.* at 79:13-16.) In response to the Bank's request for more detail, Bagnoli stated, "I'm not at liberty to discuss particular investigations that I've been a part of." (*Id.* at 79:17-22.) In fact, Bagnoli's unwillingness to delve into specifics was a common theme throughout the deposition. (*e.g. Id.* at 16:6-7, 30:6-22, 130:11-12, 205:16, 207:7-9, 208:5-22, 255:23-256:1.) At one point, Bagnoli flatly refused to "reply to questions about specific practices of other banks." (*Id.* at 208:21-22.) Repeatedly, Bagnoli declined to explain what criteria he uses to identify suspicious activity or describe the analysis he employs to determine the breadth of a subsequent investigation. Thus, although Bagnoli has abundant experience with fraud and investigation in the banking industry, it remains unclear exactly how that experience led him to the conclusion that the Bank acted unreasonably in this case. The court recognizes that the particulars of any fraud investigation will depend, to a certain degree, on the unique facts of each case, but Bagnoli's expertise must be guided by overarching principles. His silence as to what those principles are prevents the court from assessing whether his reasoning or methodology is valid and can be properly applied to the facts at issue.

An apparent dearth of analysis is precisely what distinguishes Bagnoli's testimony from the expert testimony in the cases relied upon by the Plaintiffs. In both *Metavante* and *United States Gypsum Co.*, the experts explained how their specialized experience shaped their opinions, and they expressly compared prior professional experiences with the facts at hand. *Metavante*, 619 F.3d at 761-62 (expert testified as to typical industry expectations regarding performance of online banking systems and specifically analogized the case at hand to an experience with a previous employer); *U.S. Gypsum Co.*, 670 F. Supp.2d at 773-74 (expert expressly compared plaintiff's confidential information policies with those at several other organizations with which he was familiar). Although it is not clear that the expert in *Rodrigue v. Olin Employees Credit Union*, 406 F.3d 434 (7th Cir. 2005), engaged in the same detailed analysis, that case does not support

admission of Bagnoli's testimony because, as the Bank observes, the parties in that case stipulated to the admission of the expert testimony and the court performed no formal *Daubert* analysis. (Bank's Reply at 2.)

Bagnoli has not sufficiently explained why his specialized experience necessarily begets the conclusion that the Bank did not act in a commercially reasonable manner vis-à-vis Rome and the Plaintiffs. As such, his testimony does not satisfy the reliability prong of the *Daubert* analysis. The Bank's motion to bar Bagnoli's testimony [225] is granted.

ENTER:

Dated: October 12, 2011

_____
REBECCA R. PALLMEYER
United States District Judge